UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH COLLIER, : CIVIL NO: 1:09-CV-02232
:
    Plaintiff :
: (Judge Rambo)
  v. :
: (Magistrate Judge Smyser)
CAPTAIN BLUDWORTH and :
CORRECTIONAL OFFICER ADAMS, :
:
    Defendants :

## REPORT AND RECOMMENDATION

The plaintiff, a federal prisoner proceeding *pro se*, commenced this *Bivens*[1] action by filing a complaint on November 13, 2009. The plaintiff filed an amended complaint of January 12, 2010.

The amended complaint names as defendants: R. Martinez, the Warden of the United States Penitentiary at Allenwood (USP Allenwood); 2) D. Scott Dodrill, a Regional Director with the Federal Bureau of Prisons (BOP); 3) Officer Adams, a correctional officer at USP Allenwood; 4) Captain Bludworth, a captain at USP Allenwood; and 5) known and unknown directly or indirectly responsible BOP employees.

By an order dated February 9, 2010, all of the plaintiff's claims against all of the defendants were dismissed

---

1. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

except the plaintiff's Eighth Amendment cruel and unusual punishment claim against defendants Bludworth and Adams.

The plaintiff alleges the following against defendants Bludworth and Adams in his amended complaint with regard to his Eighth Amendment claim.

On June 26, 2008, the plaintiff was placed in the Special Housing Unit (SHU) at USP Allenwood during an investigation. The investigation involved inmate gambling. On July 4, 2008, the plaintiff began a food strike (not eating) to protest his confinement. During this time, defendant Bludworth became hostile and belligerent toward the plaintiff. Defendant Bludworth threatened that, if the plaintiff continued to refuse to eat, he would have the water in the plaintiff's cell cut off and he would make the plaintiff's incarceration difficult.

Later, defendant Adams cut off the water to the plaintiff's cell. The water was not turned back on in his cell until July 12, 2008. The plaintiff became dehydrated and had to be given fluids intravenously to sustain him. The plaintiff initiated an administrative remedy request. In the response to the plaintiff's administrative remedy request, the plaintiff was told that staff had turned off the water to his shower because he had

failed to comply with cell sanitation policies and that during the process of turning off the water to the shower the water in his cell had accidentally been turned off as well.  The plaintiff denies that he had violated cell sanitation policies.

On July 17, 2008, the plaintiff was released from the SHU.  After he was released from the SHU, the plaintiff began to take medication to alleviate some of the psychological effects that his ordeal had on him.

The plaintiff claims that the deprivation of water for him to drink was cruel and unusual punishment and he is seeking compensatory and punitive damages.

On June 4, 2010, defendants Bludworth and Adams filed a motion (doc. 27) for summary judgment.  On June 18, the defendants filed a Local Rule (LR) 56.1 statement of material facts, a brief and documents in support of their motion for summary judgment.  On September 7, 2010, the plaintiff filed an answer (doc. 37) and other documents, including a LR 56.1 statement, opposing the motion for summary judgment.  On September 20, 2010, defendants Bludworth and Adams filed a reply brief. (doc 39).

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of his pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

A material factual dispute is a dispute as to a factual issue the determination of which will affect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248. A dispute as to an issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50. In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court in connection with a motion for summary judgment "is the threshold inquiry of determining whether there is the need for a trial -

5

whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

The plaintiff's remaining claims are Eighth Amendment cruel and unusual punishment claims. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Unnecessary and wanton inflictions of pain include those that are totally without penological justification. *Hope v. Pelzer*, 536 U.S. 730, 737 (2002). Conditions which inflict needless suffering, whether physical or mental, may constitute

cruel and unusual punishment. *Tillery v. Owens*, 719 F.Supp. 1256, 1275 (W.D. Pa. 1989), *aff'd*, 907 F.2d 418 (3d Cir. 1990).

Punishment is cruel and unusual only if it is "unusually severe, if there is a strong probability that it is inflicted arbitrarily, if it is substantially rejected by contemporary society, and if there is no reason to believe it serves any penal purpose more effectively than some less severe punishment." *Rhodes v. Robinson*, 612 F.2d 766, 774 (3d Cir. 1979) (quoting *Furman v. Georgia*, 408 U.S. 238, 282 (1972) (Brennan, J., concurring)).

An Eighth Amendment claim gives rise to a two prong analysis. Eighth Amendment claims must satisfy both an objective component that the deprivation must be sufficiently serious and a subjective component that the defendant acted with a sufficiently culpable state of mind (the defendant must have acted or failed to act intentionally or due to deliberate indifference). *Young v. Quinlan*, 960 F.2d 351, 359-60 (3d Cir. 1992). As to the objective component, the Eighth Amendment is violated only when an inmate is deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). As to the subjective component, the question is whether the prison official acted with deliberate indifference to the inmate's health or safety. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "[A] prison official may be held

7

liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope, supra,* 536 U.S. at 738.

Along with their motion for summary judgment and brief in support, the defendants have presented their own declarations, as well as those of two other prison officials employed at USP Allenwood. The defendants have also presented records relating to the allegations in the plaintiff's complaint. From the documentation presented by the defendants a reasonable finder of fact could find that: the plaintiff was being housed in the SHU; the plaintiff was engaged in a hunger strike at the time of the allegations in his complaint; in accordance with prison policy, the plaintiff's shower was turned off for his failure to comply with cell sanitation rules; the plaintiff's sink and toilet water were inadvertently turned off as well; prison staff restored the plaintiff's sink and toilet water within a few hours when they were made aware of the problem; defendant Bludworth was not personally involved in a decision or action to turn off the water supply to the plaintiff's shower or sink and toilet; and defendant Adams was

8

not personally involved in a decision or action to turn off the water supply to the plaintiff's shower or sink and toilet.

In response to the defendants' motion for summary judgment, the plaintiff in his LR 56.1 statement provides counter statements of facts to each paragraph of the defendants' Statement of Material Facts, argument opposing the defendants' motion for summary judgment, and records of his requests for an administrative remedy with regard to his water being shut off. Within the plaintiff's LR 56.1 Statement of Material Facts, the plaintiff often responds to specific facts alleged by the defendants by swearing under threat of perjury and then providing his own contrary version of the facts. Because the plaintiff has signed the document, we will construe those alleged facts to which the plaintiff swears under threat of perjury to be the plaintiff's declaration.[2] From the documentation presented by the plaintiff a reasonable finder of fact could find that: defendant Bludworth threatened to turn the plaintiff's water off and to make his incarceration difficult as retaliation for the plaintiff's hunger strike, defendant Adams personally turned the plaintiff's water off, the plaintiff's water was shut off from July 9, 2008 until July 12, 2008, and the plaintiff required intravenous hydration as

---

2. We construe *pro se* pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

a result.  The records provided serve as evidence that the plaintiff complained about having his water shut off.

In determining whether a genuine issue of material fact exists, we must consider all of the evidence in the light most favorable to the plaintiff.  This court may not judge the credibility of the declarants on a motion for summary judgment.  The plaintiff and the defendants have presented two very different versions of the events surrounding the cutting off of the water to the plaintiff's cell.

Other courts have found under certain circumstances that "[t]he mere fact that the water in [a prisoner's] cell was turned off for a period of days, without more, even if proved by [the prisoner] is not sufficient to rise to the level of a constitutional violation." *Castro v. Chesney*, 1998 WL 767467 (E.D. Pa. 1998)(the plaintiff admitted that he was provided with drinking water and that he was able to flush his toilet periodically).  Even if there is no drinking water in a cell for a number of days, there is no constitutional violation so long as the inmate is provided with fluids. *Calhoun v. Wagner*, 1997 WL 400043 (E.D.Pa. 1997).  However, in *Calhoun*, the plaintiff himself acknowledged that his water was shut off in an attempt to effectuate the legitimate goal

of "reprimanding and forestalling the efforts of neighboring inmates in the segregation unit who had attempted to flood their cells with water." *Id.* Under different circumstances, it has been found that the deprivation of drinking water for several days may rise to the level of a constitutional violation when there is no legitimate penological interest. *See e.g., Young*, *supra*, 960 F.2d at 364-65 (summary judgement not appropriate where uncontested factual allegations indicate that inmate was placed in dry cell for 96 hours, not provided with drinking water, and was taunted by guards about cell conditions).

In this case, the defendants' position is that the water deprivation was neither intentional nor a result of indifference, while the plaintiff's position is that it was intentional and done to punish the plaintiff. The plaintiff asserts that there was no penological justification for shutting off the water to his cell and that these actions were taken solely to retaliate against him for being on a hunger strike.

The defendants' factual position is inconsistent. They advance on one hand the position that the water supply to the plaintiff's shower was shut off for sanitation reasons in compliance with prison policy and that the sink water supply was briefly and unintentionally shut off. But the defendants also

refer to the prison policy in place at the time of the incident condoning the use of dry cells during an inmate hunger strike. The policy appears not to be germane here in that there is no contention or acknowledgment that the deprivation of water was a purposeful action taken in keeping with a plan.

The plaintiff provides evidence that the defendants were personally involved in the shutting off of his cell's water supply. The defendants provide evidence to the contrary. Based on the conflicting evidence provided by the parties, genuine issues of material fact concerning what happened exist in the instant case.

The defendants assert that to the extent the plaintiff is suing them in their official capacities they are entitled to sovereign immunity.

The doctrine of sovereign immunity bars *Bivens* claims against officials in their official capacities but not in their individual capacities. *Walker v. Zenk*, 323 Fed. Appx. 144, 147 (3d Cir. 2009).

The plaintiff has stated in his response that he is suing the defendants under *Bivens* for their personal involvement in the

alleged violation of his rights and is not suing the defendants in their official capacities.  Thus, the defendants are not entitled to summary judgment under the doctrine of sovereign immunity.

The defendants also assert that their motion for summary judgment should be granted because they are entitled to qualified immunity from the plaintiff's claims.

"Qualified immunity is a complete immunity from suit, not just a defense to liability, and is considered at the earliest possible stage of proceedings, apart from the analysis of the underlying claim itself." *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).  Qualified immunity shields government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

There are two steps to analyzing qualified immunity. *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006).  The court must determine: 1) whether the facts alleged, viewed in the light most favorable to the plaintiff, "show that the defendant's conduct violated a constitutional or statutory right" and; 2) "whether the

constitutional or statutory right allegedly violated by the defendant was clearly established." *Id*. In considering the second step under a specific set of facts, it is necessary to determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id*. Although qualified immunity is generally a question of law, a genuine issue of material fact may preclude summary judgment based on qualified immunity. *Giles*, *supra,* 571 F.3d at 326.

The defendants assert that they are entitled to qualified immunity because the plaintiff's water was only cut off for a short period of time and because they had no personal involvement in the matter. They maintain that the evidence they have presented sufficiently demonstrates this. However, the plaintiff has presented evidence to the contrary in the form of his own declaration. There are genuine factual disputes about what happened and who was involved. Under the plaintiff's version of the facts, he was deprived of water for 96 hours as a retaliatory punishment.[3] It would be clear to a reasonable officer that

---

3. As noted, even if there is a prison policy authorizing water deprivation for behavior management purposes, that policy is not relevant here since no one was acting pursuant to the policy.

cutting off all water to a prisoner's cell to punish the prisoner for refusing to eat in the absence of a legitimate penological justification for such an action was unlawful.  Thus, the defendants are not entitled to summary judgment under the doctrine of qualified immunity.

Accordingly, it is recommended that the defendants' motion (doc. 27) for summary judgment be denied.  It is further recommended that the case be remanded to the undersigned for further proceedings.

>*/s/ J. Andrew Smyser*
> J. Andrew Smyser
> Magistrate Judge

Dated:  November 9, 2010.